---

THE MARS.

(District Court, E. D. New York. April 19, 1902.)

1. TUG AND TOW—GROUNDING OF TOW—NEGLIGENT NAVIGATION IN FOG.

An ocean tug, which in going a distance of eight miles in a fog, with a barge in tow, deviated three miles from the proper course, and grounded, was in fault for the grounding of the tow, which followed; but the barge was also guilty of contributory fault where, although the fog was so thick that the tug could not be seen, nor her course ascertained except by watching the direction of the hawser, which was some 200 fathoms in length, the lookouts stationed for that purpose were inattentive to their duty, and did not observe the slackening of the hawser nor the signals of the tug to cast anchor until the barge had come up on the line, and the grounding was not avoided.

In Admiralty. Suit against tug to recover damages for grounding of tow.

James J. Macklin, for libelant.

Wing, Putnam & Burlingham, for claimant.

THOMAS, District Judge.   The Mars is a large sea-going tug, and the Jenna Hughes is a barge 220 feet in length.   On March 23, 1901, the tug, with the barge in tow, laden with 2,000 tons of coal, and drawing 14½ feet, left Philadelphia for New York, reaching Over Falls Shoal, at the entrance of Delaware Bay, about 5:10 p. m., March 24th.   From Over Falls Buoy the captain of the tug claims that he steered for about five miles in the direction of the Seventeen Foot Lump, on a course E. ½ N.; that he then went on a N. E. course for about three and a half miles; whereupon he laid a course N. E. by E., up the New Jersey shore.   The usual course is N. E. ½ E., but the captain of the Mars claims that he made the additional allowance on account of a fog that came up about 6:30 p. m., after the tug had taken its final course, and when the Cape May Light was bearing N. W., distant about six miles.   The course up the coast of N. E. by E. should have taken the tow about two and a half miles clear of the bell buoy off Hereford Bar, and three miles off from Hereford Bar.   In fact the tug brought up on the bar, whereupon the barge came up on the hawser, and took bottom, and for the injuries thus received this libel is filed.   The fog was dense, and the last course adopted by the tug was sufficient.   It appears that the tide began to run flood at the entrance of Delaware Bay, at 6:57.   The captain of the tug states that he had slack water or ebb tide in the neighborhood of Over Falls Shoal, which would soon turn to flood, and that the tide was flood at Hereford Bar at the time of the accident.   Attention is also called to the fact that: "Tidal currents on the coast of New Jersey, when uninfluenced by the winds, as a general rule follow the trend of the shore, except close in near the entrance of the several inlets, where the current of floods sets in shore, and that of the ebb off shore."   There was no wind.   Thus it appears that the captain of the tug had an opportunity to set his course along the coast before the fog set in; that he steered by compass; that nevertheless, in going a distance of eight or eight and a half miles, he deviated three miles and grounded; and this deflection occurred during about an hour and forty-five or fifty minutes.   With no wind, with a tide that should not have carried him in shore, and with full opportunity to maintain his course by compass, and while going at the rate of about five miles an hour, the tug ran ashore.   Such a state of facts must condemn the tug in the absence of adequate explanation.

Upon his cross-examination, Capt. Miles of the tug was asked: "Q. And you account for going on the bar because of the bad steering of the barge?   A. I have no other way to account for it."   The answer does not suggest that the tug was deflected from its course by the defective steering or action of the barge, and there is no sufficient evidence to sustain such contention.   But it is alleged in the answer that after the tug took bottom "she immediately signaled to the barge, which was on a hawser 225 fathoms long, first by whistle and afterwards by the megaphone, to cast off her hawser and come to anchor.   The persons on the barge did not obey the order promptly, but finally did let go their anchor.   The result of their delay was that the barge ran up on the hawser, swung round, and took bottom herself."

The barge was on a hawser of some 200 fathoms, and in the fog, when the light of the tug could not be seen, as the captain of the barge testified, the bearing of the tug could be determined only by the direction in which the hawser drew, and for this purpose the engineer and deck hand were ordered on lookout ahead, while the cook and another deck hand were at the wheel aft. When the tug went ashore the captain was in the house busy with the manifest, nobody was on lookout ahead, the engineer and deck hand being in the engine house talking and smoking, and hence the immediate navigation of the barge was left to the cook and deck hand. When the tug took ground the barge must have gone ahead on the hawser, but there was no one able to understand, or even to hear, it seems, the whistles which Capt. Miles testifies he gave to the barge. No one on the barge admits hearing them, probably for the reason that from lack of knowledge or because of inattention the signals were not differentiated from the fog signals. Then Miles called through the megaphone, the captain of the barge heard him, and came out, went forward, and ordered the anchor down, and this was done; but the vessels were then some 600 feet apart, and the grounding was not avoided. The fog required a vigilant lookout. There was none. There was no one to watch and report the condition of the hawser, and no one knew how to hear and distinguish the code of signals. At a time of dangerous navigation the outlook was abandoned. What if the necessary outlook had been maintained? It would have been seen that the hawser was slackening, the signals should have been heard, and the anchor promptly let go. The force on the barge was disorganized, and, if not useless, yet its usefulness was greatly impaired. There was no requisite preparedness to act with quickness and intelligence, if occasion for action came. For this reason it is considered that the barge was in fault, and that it should share the damages which she suffered.

A decree will be entered accordingly.